**ORAL ARGUMENT NOT YET SCHEDULED**
No. 23-7041 (Related Case: No. 23-7044)

# In the United States Court of Appeals for the District of Columbia Circuit

UNITED STATES OF AMERICA EX REL.
MARK J. O'CONNOR AND SARA F. LEIBMAN,

*Plaintiffs-Appellants,*

v.

UNITED STATES CELLULAR CORPORATION, ET AL.,

*Defendants-Appellees.*

Appeal from the U.S. District Court for the District of Columbia
Case No. 20-cv-2070 (Hon. Tanya S. Chutkan, J.)

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

Sara M. Lord
James R. Wiseman
ARNALL GOLDEN GREGORY, LLP
2100 Pennsylvania Ave. NW
Suite 350S
Washington, DC 20006
(202) 677-4054
sara.lord@agg.com
james.wiseman@agg.com

Benjamin J. Vernia
THE VERNIA LAW FIRM
1455 Pennsylvania Ave. NW
Suite 400
Washington, DC 20004
(202) 349-4053
bvernia@vernialaw.com

Daniel Woofter
GOLDSTEIN, RUSSELL &
  WOOFTER, LLC
1701 Pennsylvania Ave. NW
Suite 200
Washington, DC 20006
(202) 240-8433
dhwoofter@goldsteinrussell.com

*Attorneys for Plaintiffs-Appellants Mark J. O'Connor and Sara F. Leibman*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................... iii

INTRODUCTION .................................................................. 1

ARGUMENT ........................................................................ 3

    I.   THE 2008 COMPLAINT DOES NOT BAR PLAINTIFFS' SUIT ................. 3

        A.  Defendants Concede That Plaintiffs Are an Original Source of the Allegations in This Case Based on the 2008 Complaint. ................................................................. 3

        B.  The 2008 Complaint Does Not Disclose Substantially the Same Allegations as Those Alleged Here. ...................... 4

    II.  PLAINTIFFS ARE AN ORIGINAL SOURCE. ......................................... 6

    III. DEFENDANTS' PUBLICLY AVAILABLE DOCUMENTS ARE NOT PUBLIC DISCLOSURES THAT BAR PLAINTIFFS' SUIT. ...................... 11

        A.  Plaintiffs' Allegations are Not Substantially the Same as the Information in Defendants' FCC and SEC Filings. ....... 11

            1.  *These documents did not reveal the "critical elements of the fraudulent transaction."* ....................................... 11

            2.  *The district court did not apply the correct legal standards in determining that the public disclosure bar applies.* ..................................................................... 24

        B.  The Purported Disclosures Did Not Occur Through Enumerated Channels. ......................................................... 26

CONCLUSION ...................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Citizens United v. Fed. Election Comm'n*,
  558 U.S. 310 (2010) ................................................................29

*\*de Csepel v. Republic of Hungary*,
  714 F.3d 591 (D.C. Cir. 2013) ..........................................1, 7

*Doe v. DOJ*,
  753 F.2d 1092 (D.C. Cir. 1985) .............................................7

*Lesesne v. Doe*,
  712 F.3d 584 (D.C. Cir. 2013) ..............................................29

*Leveski v. ITT Educ. Servs., Inc.*,
  719 F.3d 818 (7th Cir. 2013) ..................................................5

*Menoken v. Dhillon*,
  975 F.3d 1 (D.C. Cir. 2020) ...................................................7

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
  547 U.S. 47 (2006) ................................................................24

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
  563 U.S. 401 (2011) ..............................................................30

*\*Silbersher v. Valeant Pharms. Int'l, Inc.*,
  --- F.4th ----, 2024 WL 58386 (9th Cir. Jan. 5, 2024)....2, 18, 26, 27, 28, 29

*Sturgeon v. Pharmerica Corp.*,
  438 F. Supp. 3d 246 (E.D. Pa. 2020) ....................................22

*United States ex rel. Atkins v. McInteer*,
  470 F.3d 1350 (11th Cir. 2006) .............................................10

*United States ex rel. Baltazar v. Warden*,
  635 F.3d 866 (7th Cir. 2011) ..................................................5

*United States ex rel. Barajas v. Northrop Corp.*,
  5 F.3d 407 (9th Cir. 1993) .....................................................11

_____

Authorities upon which we chiefly rely are marked with asterisks.

iii

*United States ex rel. Booker v. Pfizer, Inc.*,
  9 F. Supp. 3d 34 (D. Mass. 2014).............................................................4

*United States ex rel. Campie v. Gilead Scis., Inc.*,
  862 F.3d 890 (9th Cir. 2017)..................................................................12

**United States ex rel. Holloway v. Heartland Hospice, Inc.*,
  960 F.3d 836 (6th Cir. 2020)...........................................................24, 25

**United States ex rel. Maur v. Hage-Korban*,
  981 F.3d 516 (6th Cir. 2020)....................................................5, 12, 30

*United States ex rel. Oliver v. Philip Morris USA Inc.*,
  826 F.3d 466 (D.C. Cir. 2016).................................................................31

*United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*,
  892 F.3d 822 (6th Cir. 2018)..................................................................10

*United States ex rel. Scott v. Pac. Architects & Engineers (PAE), Inc.*,
  327 F.R.D. 17 (D.D.C. 2018) ..................................................................11

*United States ex rel. Settlemire v. District of Columbia*,
  198 F.3d 913 (D.C. Cir. 1999)...........................................................17, 25

**United States ex rel. Springfield Terminal Ry. Co. v. Quinn*,
  14 F.3d 645 (D.C. Cir. 1994).........................................11, 12, 13, 17, 18

**United States ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless, LLC*,
  34 F.4th 29 (D.C. Cir. 2022) ...........................................2, 8, 19, 20, 21

*United States ex rel. Wilson v. Graham County Soil & Water
  Conservation Dist.*,
  528 F.3d 292 (4th Cir. 2008)...................................................................11

## Statutes

31 U.S.C. § 3730(a)(1)(A)..........................................................................12

31 U.S.C. § 3730(a)(1)(G)..........................................................................12

31 U.S.C. § 3730(e)(4)(A)...............................................................2, 11, 25

31 U.S.C. § 3730(e)(4)(A)(i).......................................................................26

31 U.S.C. § 3730(e)(4)(A)(ii)......................................................................29

31 U.S.C. § 3730(e)(4)(B)(2)........................................................................6

iv

31 U.S.C. § 3730(e)(4)(B). ..............................................................2, 6

## Regulations

47 C.F.R. § 0.111(a)(17) ....................................................................30

47 C.F.R. § 0.13(a) .............................................................................30

47 C.F.R. § 0.131(a) ...........................................................................30

47 C.F.R. § 1.945(c) ............................................................................27

## Other Authorities

Black's Law Dictionary (11th ed. 2019)............................................26, 28

Civil Division, DOJ, *Fraud Statistics – Overview* (FY 2022),
    https://www.justice.gov/media/1273591/dl...........................................11

*Lampert & O'Connor*,
    No. 1:07-cv-800, ECF No.11 (D.D.C. Apr. 24, 2008) (Complaint)..........5

Claire M. Sylvia, The False Claims Act: Fraud Against the Government
    (4th ed. 2023)................................................................................10

USCC, Annual Report (Form 10-K) (Feb. 25, 2015) ..............................26

*Wireless Telecommunications Bureau Grants AWS-3 Licenses in the
    1695-1710 MHz, 1755-1780 MHz & 2155-2180 MHz Bands*,
    Public Notice, 31 FCC Rcd. 7129 (2016) ............................................30

# GLOSSARY

DE          Designated Entity

DOJ         Department of Justice

FCA         False Claims Act

FCC         Federal Communications Commission

JA          Joint Appendix

NSA         Network Sharing Agreement

SEC         Securities and Exchange Commission

## INTRODUCTION

As in the related appeal, defendants here nowhere dispute that the post-2010 public disclosure bar is an affirmative defense on which they have the burden of proof. Because it is their burden to establish that a public disclosure bars this *qui tam* suit, the straightest path for this Court to reverse is defendants' concession that if plaintiffs are an original source of the allegations in the 2008 Complaint, they are necessarily an original source here. Response Brief ("Resp.") 58-60. The Court can thus reverse in both related appeals on this basis alone, without reaching any other issue or resolving novel questions of law.

But this Court should rule for plaintiffs for two other independent reasons. To be sure, plaintiffs are "not required to negate an affirmative defense in their complaint." *See de Csepel v. Republic of Hungary*, 714 F.3d 591, 607-08 (D.C. Cir. 2013) (cleaned up) (collecting cases). But they did so anyway.

First, plaintiffs allege they are an original source of the allegations in the operative complaint because they contributed "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions" and also provided "the information to the Government

before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B). They support that allegation with specific allegations that are essentially the same as the allegations this Court found sufficient to overcome a motion to dismiss in *United States ex rel. Vermont National Telephone Co. v. Northstar Wireless, LLC*, 34 F.4th 29, 38-39 (D.C. Cir. 2022) ("*DISH*").

Second, the publicly available documents the district court relied on, and even those documents defendants ask this Court to consider for the first time on appeal, are not public disclosures that require dismissal. Defendants have not met their burden of showing that plaintiffs' allegations are "substantially the same" as the information disclosed in defendants' FCC and SEC filings, as required under 31 U.S.C. § 3730(e)(4)(A). And even if they had, those documents are not qualifying public disclosures under the amended public disclosure bar, because they do not fall within either of the enumerated channels defendants rely on. *See ibid.* This Court should reject defendants' invitation to create a circuit conflict with the court of appeals' decision in *Silbersher v. Valeant Pharmaceuticals International, Inc.*, --- F.4th ----, 2024 WL 58386 (9th Cir. Jan. 5, 2024), which already rejected the implausible reading of the statute that defendants press here.

**ARGUMENT**

**I.    THE 2008 COMPLAINT DOES NOT BAR PLAINTIFFS' SUIT.**

We begin where defendants end—their alternative argument that the unsealing of the 2008 Complaint at issue in the related appeal bars plaintiffs' suit. Resp.58-60. In their view, the 2008 Complaint disclosed the same fraudulent scheme because it revealed USCC's "fraudulent *modus operandi*." Resp.59.

In so doing, defendants concede that if plaintiffs are an original source of the allegations of fraud in the 2008 Complaint, they are necessarily an original source of the allegations underlying the amended complaint in this case. In any event, defendants are wrong. The 2008 Complaint discloses different frauds involving largely different defendants.

**A.    Defendants Concede That Plaintiffs Are an Original Source of the Allegations in This Case Based on the 2008 Complaint.**

As discussed in the related appeal, No. 23-7044, plaintiffs are an original source of the 2008 Complaint. Defendants' alternative argument thus provides this Court with a clear path to reversal in both decisions. If defendants believe the 2008 Complaint disclosed the fraudulent

3

scheme alleged in this case, plaintiffs are necessarily an original source based on that complaint for the reasons set forth in the related appeal.

For this reason, the Court need not reach any of the other arguments or legal issues of first impression before this Court—it can simply hold that plaintiffs are an original source of the 2008 Complaint in the related appeal and reverse in this case based on defendants' alternative argument. After all, defendants do not dispute that they carry the burden of establishing the public disclosure bar affirmative defense. *See* Opening Brief ("Br.") 34 (describing standard of review). And it is they who argue that the 2008 Complaint is the public disclosure that bars the allegations of fraud in this case.

### B.    The 2008 Complaint Does Not Disclose Substantially the Same Allegations as Those Alleged Here.

In all events, defendants are plainly wrong. The 2008 Complaint involves different auctions, time periods, duration, and even largely different defendants. *See* Resp.59. For these reasons alone, it is not a triggering public disclosure.

It is not enough that a prior public disclosure revealed some general "*modus operandi*." *E.g.*, *United States ex rel. Booker v. Pfizer, Inc.*, 9 F. Supp. 3d 34, 46 (D. Mass. 2014) (public disclosure does not bar *qui tam*

4

action in which relators "come forward with evidence of a new fraudulent activity—even new fraud that is perpetuated by old *modus operandi*"); *see also United States ex rel. Baltazar v. Warden*, 635 F.3d 866, 868 (7th Cir. 2011) ("only information that a *particular* provider had committed a *particular* fraud would" bar *qui tam* action if publicly disclosed, not general information about widespread fraud (emphasis in original)). Otherwise, a public disclosure would forever "immunize" a defendant from "related forms of fraud." *See United States ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 529 (6th Cir. 2020); *see also Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 829-30 (7th Cir. 2013) (allegations not substantially the same where, among other things, "there is no temporal overlap").

The 2008 Complaint nowhere mentions Advantage. It could not have—Advantage did not even then exist. *See Lampert & O'Connor*, No. 1:07-cv-800, ECF No. 11 (D.D.C. Apr. 24, 2008) (Complaint). Nor does the 2008 Complaint involve Auction 97, which occurred more than six years later. The focus of the 2008 Complaint is pre-licensing fraud by USCC and King Street, Carrol, and Barat. The Amended Complaint in this case alleges a much broader scheme involving Advantage, William Vail (who

was not at all involved, to plaintiffs' knowledge, with defendants during the frauds alleged in the 2008 Complaint), a 2014 auction, and later post-licensing conduct. JA319-25¶¶112-31; JA328-30¶¶142-43; JA332¶152; JA332¶156.

## II.    PLAINTIFFS ARE AN ORIGINAL SOURCE.

Regardless of whether the Court thinks the publicly available documents highlighted by the district court, or those defendants ask this Court to consider on appeal, are public disclosures in an enumerated channel, plaintiffs are an "original source" because they contributed "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions" and provided "the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B)(2).

Like the district court, defendants ask this Court to assess facts and otherwise view the allegations through a lens favorable to the defense. But plaintiffs alleged that they qualify as an "original source" of their allegations and that they have "independent material knowledge of the information on which the allegations are based," which they "voluntarily provided" to the Government. JA292¶26. Plaintiffs' allegations, accepted

as true as they must be, should end the inquiry at this stage and warrant reversal. *See Menoken v. Dhillon*, 975 F.3d 1, 5 (D.C. Cir. 2020). Defendants cannot meet their burden of showing that it is "*unequivocally apparent from the face*" of the Amended Complaint that plaintiffs are not an original source. *See Doe v. DOJ*, 753 F.2d 1092, 1116 (D.C. Cir. 1985) (burden of proof on defendants to establish affirmative defense) (emphasis in original); *see also de Csepel v. Republic of Hungary*, 714 F.3d 591, 607-08 (D.C. Cir. 2013) (collecting cases).

Regardless, plaintiffs pleaded with particularity independent knowledge that materially adds to defendants' purported public disclosures. Much of this knowledge is discussed in greater detail below, relating to whether the public documents on which defendants rely disclose "substantially the same" allegations or transactions as the Amended Complaint. *Infra* (III)(A)(1).

The additional information unquestionably adds something "significant to the public record," *contra* Resp.53, particularly considering the nature of the FCC rules at issue. Not only do these additional allegations demonstrate that USCC's relationship with Advantage was disqualifying under the designated-entity regulations, they also

contribute to the accumulation of information that makes credible plaintiffs' allegations that defendants *never intended* to have or maintain legitimate designated-entity relationships. *See United States ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless, LLC*, 34 F.4th 29, 38-39 (D.C. Cir. 2022).

As further described *infra*, plaintiffs' additional material information includes pleading with specificity that:

- during the bidding and after the licenses were awarded, Advantage's purported business addresses were a vacant interior room in an apartment, a storefront in a strip mall with no signage, and Vail's own home in a retirement community, JA312¶¶87-88; JA321-22¶¶118-122; JA325¶133;

- Advantage never employed anyone other than Vail (whose only apparent duty was to sign FCC applications), made any FCC filings or payments required of a regulated entity, or conducted itself in any way as if it were a business responsible for deploying more than $400 million worth of spectrum licenses, JA312¶¶87-88; JA321-22¶¶118-122; JA325¶133;

8

- Advantage's bidding was conducted from King Street's offices under the control of USCC and USCC's proxy, DiNardo, JA312¶89; JA313¶92;

- USCC hired experts to educate Vail on the mechanics of placing bids, JA312¶90;

- one of the two Advantage-designated bidders was a King Street employee with no known relationship with Advantage and controlled by DiNardo, JA313¶91;

- Advantage and USCC entered into and concealed their agreement to transfer the licenses to USCC, JA316¶103;

- pursuant to that undisclosed agreement, Advantage has transferred control of the licenses to USCC, JA323-24¶¶124-28; and

- the fictitious 2012 King Street Lease created by USCC and DiNardo was falsely and fraudulently drafted to cover only the spectrum necessary to qualify for further benefits to USCC from the FCC—notwithstanding that USCC already controlled the King Street licenses under the secret 2011 King

Street Lease and to prevent the FCC from discovering the actual extent of the transfer, JA323¶126.[1]

Defendants also repeat the district court's error in relying on the government's declination as a justification for barring relator's suit here. Resp.53-54, 57; JA279. But the "Government's decision not to intervene is not a decision on the merits of the case. If it were, there would be no reason for the statute to authorize a relator to proceed without the Government." Claire M. Sylvia, The False Claims Act: Fraud Against the Government § 11:15 (4th ed. 2023) (collecting cases); *see also United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 836 (6th Cir. 2018); *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 n.17 (11th Cir. 2006). The fact that in Fiscal Year 2022, relators in declined cases returned more funds to the Treasury than did the Government in cases in which it intervened and which it originated rebuts the Court's inference (and defendants' suggestion) that declined cases necessarily lack merit. *See* Civil Division, DOJ, *Fraud Statistics – Overview*, at 2 (FY 2022), https://www.justice.gov/media/1273591/dl (in

---

[1]     Defendants refer to each of these agreements as an "NSA." *See* Resp.18.

2022, Government recovered $776,751,374 in cases in "Where U.S. Intervened or Otherwise Pursued," whereas relators recovered $1,184,884,813 in cases "Where U.S. Declined" to intervene).[2]

## III. DEFENDANTS' PUBLICLY AVAILABLE DOCUMENTS ARE NOT PUBLIC DISCLOSURES THAT BAR PLAINTIFFS' SUIT.

### A. Plaintiffs' Allegations are Not Substantially the Same as the Information in Defendants' FCC and SEC Filings.

#### 1. *These documents did not reveal the "critical elements of the fraudulent transaction."*

The public disclosure bar applies to materials only if they disclose "substantially the same allegations or transactions" alleged by the plaintiff. 31 U.S.C. § 3730(e)(4)(A). Under even the pre-2010 version of the statute, this Court held that the public disclosure bar is triggered only if the "critical elements of the fraudulent transaction" are in the "public domain." *See United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994). That is why, in the *Springfield*

---

[2]     Even if the Court disagrees about the adequacy of plaintiffs' original source allegations, plaintiffs should at least have the opportunity to amend. *See, e.g.*, *United States ex rel. Wilson v. Graham County Soil & Water Conservation Dist.*, 528 F.3d 292, 309 (4th Cir. 2008); *United States ex rel. Barajas v. Northrop Corp.*, 5 F.3d 407, 409 (9th Cir. 1993); *United States ex rel. Scott v. Pac. Architects & Engineers (PAE), Inc.*, 327 F.R.D. 17, 22 (D.D.C. 2018).

11

*Terminal* equation, the "X and Y" represent the "essential elements" of the fraud. *Id.* at 657. The "operative question" is whether the publicly disclosed information is "sufficient to set the government on the trail of the alleged fraud without the relator's assistance." *Maur*, 981 F.3d at 524 (quotation marks omitted).

1. The essential elements of fraud under the False Claims Act include falsity, scienter, and materiality. *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017).[3] These essential elements are nowhere to be found in the publicly available documents on which defendants rely. On the contrary, defendants rely on those documents to argue that they *disprove* the allegations of fraud. They cannot have it both ways.

If defendants' documents reveal the falsity, scienter, and materiality of the fraudulent scheme plaintiffs allege, the FCC would not have granted the licenses to defendants based on these disclosures.

---

[3]    Interpreting the False Claims Act's presentment provision, 31 U.S.C. § 3730(a)(1)(A). Plaintiffs' complaint also alleged defendants' violation of the FCA's "reverse false claims" provision, *id.* § 3730(a)(1)(G), whose premise is the creation and use of false records to conceal or decrease an obligation to repay money to the Government (here, wrongly retained bid credits).

Defendants' documents, on their face, contain only innocuous information. And "the courthouse doors do not swing shut merely because innocuous information necessary though not sufficient to plaintiff's suit has already been made public." *See Springfield Terminal*, 14 F.3d at 657.

This deficiency is especially apparent in defendants' chart of purported allegations, which for the most part contains innocuous facts that do not suggest *fraud*. Resp.29-33. Defendants mischaracterize these facts as plaintiffs' allegations of fraud but they merely reveal: "DiNardo had past involvement in DEs in which USCC invested"; "DiNardo and USCC invested in Advantage, with USCC owning 90 percent"; "[a]fter [the] unjust enrichment periods expired, USCC acquired spectrum licenses won by earlier DiNardo-affiliated DEs in which USCC invested"; and "Advantage bid on and won licenses overlapping USCC's coverage areas." *See* Resp.29-31.

Plaintiffs agree with defendants that these particular facts were publicly disclosed and even that they could be consistent with the designated-entity program. *See, e.g.*, Doc.179-1, at 22, 28; Resp.5-6. But while defendants point to regulations permitting large companies to invest in designated entities, what occurred here went well beyond the

13

rules. Defendants' chart points to disparate documents filed in the public domain that reveal *some* information about defendants' "ownership structure," investor protections, and leasing arrangements, Resp.29-31, but do not reveal the fraudulent scheme to conceal defendants' disqualifying relationship alleged by plaintiffs, let alone any "essential" or "critical" elements of the fraud. Rather, it is critical to plaintiffs' allegations of fraud that defendants designed those documents to fraudulently and misleadingly conceal the true nature of defendants' relationships. *See, e.g.*, JA308-10¶¶77-82; JA317-19¶¶106-11; JA321¶120.

In addition to the alleged public disclosures described above, defendants' "restatement" of plaintiffs' allegation regarding the 2011 King Street Lease is wrong on several levels. Plaintiffs' allegation is not that "USCC and King Street entered into an NSA beginning around 2011 under which USCC managed King Street's spectrum." *Contra* Resp.30. Rather, plaintiffs' allegation is that USCC and King Street entered into a *secret, never disclosed* agreement *in 2011* under which USCC *leased all* of King Street's spectrum in 90 of its 152 markets, in violation of the FCC's clear rules. *See* Br.22, 38.

14

Not only did defendants conceal the 2011 lease—which, if disclosed at the time of its formation and throughout the unjust enrichment period, would have required King Street to repay more than $100 million in bidding credits and disqualified Advantage as a designated entity—they continue to this day to *purposely* mislead the government by pointing to a *fake, never implemented* 2012 lease. For example, defendants cite "USCC's [Auction 901] Long-Form Application (FCC Form 680)," in their Response Brief chart as "disclosing and summarizing [the] [lease]." Resp.30. As defendants well know, USCC's Auction 901 application provided a summary of the fake 2012 King Street Lease, which USCC and King Street created solely to avoid having to reveal the much more expansive—*and disqualifying*—2011 King Street Lease to the FCC. This fraudulent "remove and replace" activity may have been the cause of the district court's confusion and caused the judge to conclude that the real 2011 and fake 2012 agreements were virtually identical in all important respects. But for the reasons explained in the related appeal, *see* Reply Br.13-19, No. 23-7044, that is patently wrong.

Nor did defendants publicly disclose plaintiffs' credible allegation that Advantage's general partner (Vail), the person ostensibly in control

15

of a business holding more than $400 million worth of spectrum licenses and responsible for setting and implementing the company's policy and financial goals, had no involvement with Advantage beyond signing a few documents and collecting a paycheck from USCC. Indeed, defendants' purported public disclosures failed to demonstrate even that "Advantage did not maintain an active office and had limited staff." Resp.31 (quoting JA727-28).

The Advantage/USCC limited partnership agreement merely states that the "current anticipation" was that "one of [Frequency's] principal officers" would "devote[]" "one-half of th[eir] work time" to "wireless business activities," and that the "General Partner" of Advantage would be paid $50,000 per year for ten years. JA727§§5.4(a); JA728§§5.5(a)-(b). That says nothing about Advantage's "office," whether Advantage had any other employees, or whether the "current anticipation" at the time of formation changed in the manner that would be expected of a legitimate start-up telecom company ramping up its business. *See* JA286¶5; JA312¶¶87-89; JA321-22¶120. Nor does it reveal that, in fact, Advantage's general partner was retired, had no real experience, and never established a place of business, a website, or even a telephone

number. JA290¶17; JA312¶88; JA312¶90; JA321¶120. Each of these undisclosed facts alleged by plaintiffs are significant in the FCC's *de facto* control analysis.

The determination of *de facto* control, as defendants have repeatedly emphasized in this case, involves a multitude of factors and the totality of all facts and arrangements. *See, e.g.*, Resp.6-7; Doc.149-1, at 28. At the very least, it is the accumulation of plaintiffs' independent knowledge that establishes USCC's *de facto* control over Advantage and exposes the deficiencies in defendants' disclosures—deficiencies that led the FCC to grant the licenses to Advantage, despite the disqualifying relationship between Advantage and USCC.

And contrary to defendants' suggestion, plaintiffs have never asserted that a public disclosure must "irrefutably prove" the fraud to trigger the bar. *Contra* Resp.35 (quoting *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 919 (D.C. Cir. 1999) (applying pre-2010 bar)). Instead, plaintiffs have argued that the public disclosure must "contain" the "essential elements" of fraud, which is precisely what this Court held in *Springfield Terminal*, 14 F.3d at 654.

Perhaps defendants' argument would have more force had they been able to point to a single, or even a couple, qualifying public disclosures that contained all the information sufficient to suss out their fraudulent scheme. Instead, defendants point to a bundle of disparate documents in the public domain, filed with different government agencies, arguing that each contains a piece of the puzzle, which together sufficiently disclose the frauds. But when "the scattered qualifying public disclosures may each contain a piece of the puzzle, but when pieced together, they fail to present the full picture of fraud," and relator "filled the gaps by stitching together the material elements of the allegedly fraudulent scheme," the allegations are not "substantially the same" as those in the qualifying public disclosures. *See Silbersher v. Valeant Pharms. Int'l, Inc.*, --- F.4th ----, 2024 WL 58386, at *11 (9th Cir. Jan. 5, 2024). The public disclosure bar does not apply "when only innocuous or spotty information—insufficient in itself to constitute an allegation of fraud or to reveal the essential elements of a fraudulent transaction— exists in the public domain." *See Springfield Terminal*, 14 F.3d at 657.

2. Defendants' attempts to distinguish this suit from the Court's decision in *DISH* only highlights how *DISH* is on all fours with this case.

As in *DISH*, plaintiffs argue that "obviously concerted conduct … ma[de] 'little sense unless [defendants] agreed in advance' to bid on behalf of and transfer their spectrum rights to [USCC]." *See* Resp.37 (quoting *DISH*, 34 F.4th at 38-39). And like the relator in *DISH*, plaintiffs' independent knowledge and allegations reveal a fraud not apparent on the face of defendants' disclosures. In both *DISH* and here, relators alleged the following:

- the relevant disclosures indicate that the designated entities acquired their capital from and entered into bidding agreements with the large investor that alone do not establish a disqualifying relationship, *see DISH*, 34 F.4th at 32-33; *compare* JA308-10¶¶77-82;

- the designated entities "were formed as shell companies without any assets or revenues, at [the large investor's] direction, shortly before the deadline to apply for Auction 97," *DISH*, 34 F.4th at 38; *compare* JA285-86¶¶2-3; JA286¶5; JA291¶21; JA308¶76; JA312¶¶87-88; JA321-22¶¶120-22;

- the designated entities "bid for spectrum licenses in Auction 97 with financing provided almost exclusively from entities

controlled by [the large investor]," *DISH*, 34 F.4th at 38 (cleaned up); *compare* JA286¶6; JA314¶95;

- the designated entities "finished the auction" with spectrum licenses in areas that would provide "complete coverage" to the large investor "when combined," *DISH*, 34 F.4th at 38; *compare* JA286¶4; JA314¶94; JA321¶118; and

- the designated entities had not "'taken steps to deploy a wireless system' in the four years since Auction 97 concluded," *DISH*, 34 F.4th at 38; *compare* JA320¶115; JA321-25¶¶120-31; JA326¶136.

As discussed at length herein, plaintiffs, of course, allege significantly more material information not alleged or addressed in *DISH*. The point is that these allegations were sufficient in *DISH*, so they should be sufficient here.

3. Defendants also ignore the standard of review and fail to adequately address aspects of plaintiffs' allegations that do not appear anywhere in any public disclosure. For example, defendants, like the district court, attempt to brush off plaintiffs' allegations of undisclosed agreements that gave USCC control over Advantage or otherwise created

20

a disqualifying relationship. Resp.33; JA1002-03. But plaintiffs plainly allege "a web of secret agreements" that Advantage concealed from its disclosures. Resp.38; *see, e.g.*, JA310¶83; JA316¶103; JA326¶137 (allegations of secret agreements). At this stage, the allegations cannot be disregarded—they must be accepted as true. *DISH*, 34 F.4th at 39 (relator's allegations that "alleged undisclosed agreements … involved Northstar's and SNR's procurement of spectrum licenses on DISH's behalf" sufficient at pleading stage, "as they provide sufficient substance to both afford Defendants the opportunity to prepare a response and to warrant further judicial process" (cleaned up)).

Moreover, plaintiffs substantiate that assertion with well-pleaded allegations of specific secret agreements that plaintiffs uncovered through their own efforts. For example, plaintiffs allege with specificity the concealment and materiality of defendants' secret 2011 King Street Lease, which defendants have consistently misconstrued and misrepresented. As explained in the Opening Brief (at 22-23, 58), the undisclosed 2011 King Street Lease exposes a chain of relationships that disqualified Advantage as a designated entity. For this reason, Advantage (like King Street), was required to disclose it to the FCC in its

21

applications and designated entity annual reports. It did not. JA306-07¶¶70-73; JA310¶81; JA317¶104; JA325¶132.

Plaintiffs also allege with specificity a secret agreement that gave King Street and USCC complete control of Advantage's bidding—another prohibited arrangement under the designated-entity regulations. As plaintiffs allege and as described above: USCC hired experts to educate Advantage's general partner on the basic mechanics of bidding to keep up the façade of Advantage acting as a legitimate business; all bidding was conducted in King Street's, not Advantage's offices; one of Advantage's two authorized bidders was employed by King Street and had no contractual relationship with, or duty to, Advantage; Advantage had no legitimate offices or business activities, existing on paper only to serve USCC in Auction 97; and USCC controlled Advantage's selection of licenses. JA312-14¶¶89-94.

Plaintiffs also credibly allege secret agreements that allowed USCC to take full control of Advantage (the business) in addition to Advantage's spectrum during the unjust enrichment period without repaying the bidding credits. *See Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 264 & n.115-16 (E.D. Pa. 2020) (rather than "conducting the substantial

similarity inquiry at too high a level of generality," courts must "take a careful look at the details of each alleged fraud"). For instance, as discussed in detail above and in the Opening Brief, plaintiffs alleged and provided substantial never-disclosed evidence that Advantage's general partner (Vail) had *nothing* to do with setting the company's policy goals, establishing a place to conduct business, obtaining financing, hiring employees, choosing wireless technology and vendors, building out Advantage's spectrum licenses, making regulatory filings, and acquiring customers. Importantly, plaintiffs did not allege those things went undone. Rather, plaintiffs allege that USCC paid Vail to pretend to the FCC that he controlled Advantage, while USCC secretly took over all the general partner duties.

In sum, the information defendants claim is in the public domain is merely a collection of innocuous facts that fail to disclose in any manner the fraud they have engaged in for years. Defendants provided these facts to the FCC, SEC, and the public to *hide* their fraud and hang onto their ill-gotten bidding credits.

### 2. The district court did not apply the correct legal standards in determining that the public disclosure bar applies.

Just as in the related appeal, the district court failed to correctly apply the "substantially the same" standard. Instead, the district court applied a "substantially similar" and even a "not substantially dissimilar" standard. JA274; JA278; JA1002. In so doing, the district court applied a less favorable standard to plaintiffs than Congress established in the statute.

To be sure, it makes little difference in this appeal either way. Plaintiffs win under any interpretation of that language. And as suggested previously, this Court need not even reach the issue. But if this Court does so, it should adopt the persuasive reasoning of the Sixth Circuit in *United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 849-50 & n.11 (6th Cir. 2020). *See Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 57-58 (2006) ("We refuse to interpret the … [a]mendment in a way that negates its recent revision, and indeed would render it a largely meaningless exercise.").

The district court's errors appear to involve a confusion of the pre- and post-2010 public disclosure bar standard. Under the previous

24

statute, the public disclosure bar applied to lawsuits "based upon" publicly disclosed "allegations or transactions." 31 U.S.C. § 3730(e)(4)(A) (2006). Some courts interpreted this to mean that claims were deemed barred if they were "even partly based upon" publicly disclosed transactions. *Holloway*, 960 F.3d at 851. "From a textual standpoint, 'substantially the same' facially demands a greater degree of similarity between the qui tam complaint and the prior disclosures than 'based upon' does. And 'substantially the same' undoubtedly is more rigorous than 'even partly based upon.'" *Ibid.*

And many courts, including this one, described their test as whether the "relator's allegations are *substantially similar* to information disclosed publicly." *Holloway*, 960 F.3d at 849 (quotation marks omitted); *see, e.g.*, *Settlemire*, 198 F.3d at 918 (applying "substantially similar" test under pre-2010, jurisdictional public disclosure bar). Of course, "'[s]imilar' obviously has a different meaning than 'same.' 'Same' means identical; 'similar' means analogous, comparable, or resembling the other." *Holloway*, 960 F.3d at 850 n.11. And "substantially the same" is certainly not the equivalent of "not substantially dissimilar." *Contra* JA274; JA278; JA1002.

**B.    The Purported Disclosures Did Not Occur Through Enumerated Channels.**

A public disclosure triggers the bar only if it occurs through one of three enumerated channels. Defendants argue that the purported public disclosures here occurred through either the first or second enumerated channel. They did not.[4]

The first channel applies only to adversarial hearings in which the Government is a party. *See* 31 U.S.C. § 3730(e)(4)(A)(i). An FCC auction and licensing process is not an adversarial hearing and the Government is not a "party."

As the Ninth Circuit explained in *Silbersher*, "hearing" in the first enumerated channel "contemplates an adjudicatory hearing before a neutral tribunal or decisionmaker." *Silbersher*, 2024 WL 58386, at *7 (citing the definition of *Hearing* and *Administrative Hearing* in Black's Law Dictionary (11th ed. 2019)). And "the term 'party' describing the

---

[4]    Plaintiffs, like defendants, focus on FCC filings in particular, but the logic of their reasoning applies to SEC filings. In any case, the sole SEC filing relied upon by the district court provides the least information and was not even provided to the FCC. *See* Br.30 n.3. In fact, it conceals the fraud further by stating, for example, USCC "participated in Auction 97 *indirectly* through its *limited* partnership" in Advantage. *See*, *e.g.*, USCC, Annual Report (Form 10-K) at 4, 20, 67 (Feb. 25, 2015) (emphasis added), https://perma.cc/JR5Q-2ZZ4.

government's role in such a hearing contemplates that channel (i) hearings are also adversarial." *Ibid.* (quotation marks omitted).

The FCC's designated-entity application process is neither an *adversarial* proceeding, nor "adjudicated on the merits before a neutral tribunal or decisionmaker," *Silbersher*, 2024 WL 58386, at *7. As plaintiffs have repeatedly explained, FCC regulations provided that the agency may—as it did here—grant a designated-entity license application "*without a hearing*." 47 C.F.R. § 1.945(c) (emphasis added). Defendants do not explain how the application review that occurred here is a "hearing" within the meaning of the FCA when the relevant regulations disclaim the same.

Defendants also argue that the FCC is not a "neutral tribunal or decisionmaker" because it has a "direct financial interest in FCC auctions and licensing proceedings." Resp.45-46. This dooms their argument. For without a neutral tribunal or decisionmaker, there is no authority to conduct a "hearing" as required to fall within the first enumerated channel.

More fundamentally, both Congress and the FCC would strongly dispute defendants' contention that the FCC "has a direct financial and

27

proprietary interest in auction and licensing proceedings." Resp. 45-46. The FCC does not own or hold spectrum licenses and the money derived from spectrum auctions goes directly to the Federal Treasury. Indeed, the amount paid at auction is not part of the FCC's consideration when it reviews winning bidders' license applications.

For similar reasons, the Government is not "a party" in the FCC's licensing proceedings. In this context, the word "party" refers to litigants—not adjudicators. *Silbersher*, 2024 WL 58386 at \*8 (a "party" is "[o]ne by or against whom a lawsuit is brought") (quoting *Party*, Black's Law Dictionary (11th ed. 2019)). In Auction 97, the FCC—and no one else—was the adjudicator of Advantage's claim for designated-entity status, not a party to the action.

Defendants argue for a much broader definition of "party" in which a party is "[a] person who takes part in a legal … proceeding." Resp.45. As defendants would have it, the judge, each member of the jury, and even the court deputy are "parties" in any court proceeding. That not only does violence to the text, but it also conflicts with the Ninth Circuit's

28

decision in *Silbersher*. This Court should reject the invitation to create a circuit split based on an implausible reading of the statute.[5]

FCC filings are also not disclosures under the second enumerated channel because they are not disclosed in a "congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation." 31 U.S.C. § 3730(e)(4)(A)(ii). As plaintiffs have stated before, that channel reaches "Federal … hearing[s]" only to the extent they are not criminal, civil, or administrative in nature, or else the first enumerated channel is surplusage. Br.50-51.

In addition, the second enumerated channel is primarily concerned with "fact-finding" or an "investigatory process to obtain information." *Silbersher*, 2024 WL 58386, at *7 (quotation marks omitted). FCC licensing proceedings, which expressly rely on the truthfulness of

---

[5]    Defendants are wrong that plaintiffs forfeited this argument. Resp.45. Plaintiffs clearly argued to the district court that the FCC and SEC filings are not public disclosures under channel (i). JA953. Any refinement of that argument on appeal "is—at most—a new argument to support what has been a consistent claim," and thus properly raised before this Court. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010) (cleaned up). Even if that were not so, this Court should resolve this "straightforward legal question" since "both parties have fully addressed the issue on appeal." *See Lesesne v. Doe*, 712 F.3d 584, 588 (D.C. Cir. 2013) (quotation marks omitted).

applicants' certifications, are not "fact-finding" or "investigatory proceedings." In this case, the FCC's Wireless Telecommunications Bureau granted Advantage's license application via listing in a public notice, without a hearing, investigation, or fact-finding. *Wireless Telecommunications Bureau Grants AWS-3 Licenses in the 1695-1710 MHz, 1755-1780 MHz & 2155-2180 MHz Bands*, <u>Public Notice</u>, 31 FCC Rcd. 7129, 7131-37 (2016). In contrast, the responsibility for investigations generally lies with the FCC's Enforcement Bureau and the Office of Inspector General. 47 C.F.R. §§ 0.131(a), 0.111(a)(17), 0.13(a). The fact that an applicant provides information in a licensing proceeding does not make the proceeding an investigation under the second channel.

Finally, FCC filings are not "Federal reports" within the meaning of the second enumerated channel. Even under the broader understanding of "Federal report" advocated by defendants, the government had no role in the selection or authorship of the defendants' filings in this case. *Compare Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011) (information released in response to a FOIA request—which necessarily entail the efforts and selection of Federal agents—was a public disclosure); *Maur*, 981 F.3d at 522-23

30

(agreement with federal Inspector General created pursuant to court order qualified as "Federal report"); *United States ex rel. Oliver v. Philip Morris USA Inc.*, 826 F.3d 466, 475-76 (D.C. Cir. 2016) (materials on public website as mandated by a court order constitute disclosures made within a civil hearing under *pre-2010* public disclosure bar).

## CONCLUSION

The district court's decision should be reversed.

Dated: February 2, 2024                      Respectfully submitted,

                                             /s/ Daniel Woofter

Sara M. Lord                                 Daniel Woofter
James R. Wiseman                             GOLDSTEIN, RUSSELL &
ARNALL GOLDEN GREGORY,                         WOOFTER, LLC
  LLP                                        1701 Pennsylvania Ave. NW
2100 Pennsylvania Ave. NW                    Suite 200
Suite 350S                                   Washington, DC 20006
Washington, DC 20006                         (202) 240-8433
(202) 677-4054                               dhwoofter@goldsteinrussell.com
sara.lord@agg.com

Benjamin J. Vernia                           *Attorneys for Plaintiffs-*
THE VERNIA LAW FIRM                          *Appellants Mark J. O'Connor*
1455 Pennsylvania Ave. NW                    *and Sara F. Leibman*
Suite 400
Washington, DC 20004
(202) 349-4053
bvernia@vernialaw.com

31

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with Federal Rule of Appellate Procedure 32(a)(7) because it contains 5,690 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point New Century Schoolbook LT Std.

Dated: February 2, 2024          /s/ Daniel Woofter
                                                Daniel Woofter

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2024, I caused this document to be electronically filed with the Clerk of Court by using the electronic filing system, which will send a notice of electronic filing to all parties who have registered with the electronic filing system.

Dated: February 2, 2024          /s/ Daniel Woofter
                                              Daniel Woofter